IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| XIAOHUA HUANG | § | |
| --- | --- | --- |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 2:16-cv-00947-JRG-RSP |
| | § | |
| HUAWEI TECHNOLOGIES CO. LTD., et al., | § | |
| | § | |
| *Defendants*. | § | |

## ORDER AND REPORT AND RECOMMENDATION

Before the Court is Defendant Huawei's motion for summary judgment [Dkt. No. 40], wherein Huawei argues that Plaintiff Xiaohua Huang's patent infringement claims are barred by *res judicata* and the *Kessler* doctrine. Huang has also moved to strike an exhibit that Huawei filed in support of its summary judgment motion and seeks to compel Huawei to file certain exhibits under seal. [Dkt. No. 43].

## BACKGROUND AND PROCEDURAL HISTORY

Huang is the owner of U.S. Patent Nos. RE 45,259, 6,744,653, and 6,999,331. These patents relate to ternary content-addressable memory ("TCAM") technology in the semiconductor chip field. TCAM is a type of memory that can achieve high-speed routing and switching in networking devices.

In August 2015, Huang filed a patent infringement action against Defendants in this court, alleging that Huawei infringed the same three patents. *Huang v. Huawei Techs. Co.*, 2:15-cv-1413-JRG-RSP (E.D. Tex. Aug. 14, 2015) ("Case 1"). Huang originally brought the complaint on behalf of himself and his company, CMOS Micro Device, Inc. ("CMOS"). Case 1, [Dkt. No. 1]. Huawei filed a motion to compel CMOS to obtain counsel, as a corporation cannot proceed *pro se*. Case

1

1, [Dkt. No. 8]. In response, Huang filed his First Amended Complaint, dropping CMOS from the suit. Case 1, [Dkt. No. 12]. Huang then filed a Second Amended Complaint and Third Amended Complaint. Case 1, Second Am. Compl., [Dkt. No. 16]; Case 1, Third Am. Compl., [Dkt. No. 38].

In his Third Amended Complaint, Huang alleged that Huawei provided solutions for IP/Carrier Ethernet, Networking & Security, and Cloud Computing & Data Centers, and that Huawei was selling the following products for those solutions in the United States: (1) High-end Universal Service Routers NE40E-X16A, NE40E-X8A; (2) Series Universal Service Router NE40E-X1/X2-M; (3) S9300 Series Terabit Routing Switches; (4) S6300 Switches; (5) S9700 Series Terabit Routing Switches; (6) CloudEngine 12800 SeriesData Center Core Switches; and, (7) S12700 Series Agile Switches. *Id.* at ¶ 16. Huang alleged that these products use embedded TCAM and or/ TCAM Chips to perform ACL, QoS, VLAN, LPM, and other parallel searching, filtering, and access control functions. *Id.* at ¶ 17. Huang contended that the TCAM chips came mainly from Broadcom Corporation and were coded with the Knowledge Based Processor that infringed the '259 patent. *Id.* Huang also contended that the embedded TCAM was used in the ASIC chips designed by HiSilicon, an alleged division of Huawei, and that the embedded TCAM infringed the '653 and '331 patents. *Id.* Huawei answered Huang's Third Amended Complaint. Case 1, [Dkt. No. 44]. Huawei also served Huang with a Rule 11 safe harbor letter, contending that a reasonable pre-filing investigation would have revealed that no Huawei networking products sold in the United States had ever contained the HiSilicon chips that were the basis of the infringement claims under the '653 and '331 patents. Case 1, [Dkt. No. 52-2].

Huang sought leave to file a fourth amended complaint, Case 1, [Dkt. No. 55], and moved to supplement his P.R. 3-1 Infringement Contentions, Case 1, [Dkt. No. 56]. Huang attempted to add approximately 74 new accused products or products families and to identify 15 additional

Broadcom TCAM chips or TCAM chip families as allegedly covered by the '259 patent. Huawei opposed this attempt, arguing that all 74 of the new accused products or product families were a matter of public knowledge because all accused products, with the exception of five product families, were publicly disclosed on Huawei's website before December 1, 2015, the date Huang served his original Case 1 infringement contentions. Case 1, [Dkt. No. 66]. The Court denied both of Huang's motions in July 2016, finding that Huang had not shown good cause to add numerous new accused products so late in litigation and the fact that claim construction briefing had already taken place. Case 1, [Dkt. No. 93]. The Court also stayed the case until September 2016, a 60-day period that allowed Huang to seek assistance of counsel. *Id.* Huang never hired counsel.

After the Court denied his motion to make a late amendment to his P.R. 3-1 Infringement Contentions in Case 1, Huang filed the present case against Huawei in this court in August 2016, alleging infringement of the same patent claims as Case 1 by the same 74 Huawei products he attempted to add in Case 1. *Huang v. Huawei Techs. Co.*, 2:16-cv-00947-JRG-RSP (E.D. Tex. Aug. 26, 2016) ("Case 2"). Huang then filed a motion to consolidate his two actions on the Case 1 docket. Case 1, [Dkt. No. 104].

Meanwhile, Case 1 continued to proceed. There, Huawei moved for summary judgment of noninfringement at the end of the 60-day stay, arguing that Huang failed to identify a triable issue with respect to alleged infringement of the patents-in-suit. Case 1, [Dkt. No. 105]. Given that Huang chose not to hire counsel and thus was not able to obtain information from Huawei about the accused products under the parties' joint protective order,[1] the Court found that Huang did not

---

[1] The protective order provided that certain types of confidential information designated as "attorneys' eyes only" would be subject to disclosure only to counsel, including outside counsel and "in-house counsel with no competitive decision-making authority." Case 1, [Dkt. No. 33]. The protective order also limited disclosure of information designated as confidential source code to "outside counsel and up to three (3) outside consultants or experts." *Id.* Because Huang is not an attorney, Huang was prohibited from accessing necessary confidential information. The Court explained to Huang at a July 27, 2016 hearing that his *pro se* status would likely impair if not prevent a

raise a triable issue of fact. Case 1, [Dkt. No. 134]. The Court noted that Huang highlighted several alleged reverse engineering records, but the Court granted Huawei's motion to strike those records because Huang failed to produce them during discovery. *Id.* Thus, the Court granted summary judgment in favor of Huawei and dismissed Huang's patent infringement claims on the merits. *Id.*; Case 1, [Dkt. No. 146]. Huang filed numerous objections and requests for reconsideration of the Court's order dismissing Case 1. On January 12, 2017, the Court entered an additional Order confirming that all Huang's claims stood dismissed, found Huang's motion to consolidate moot, and directed the parties to desist from further trial preparation. Case 1, [Dkt. No. 169]. Plaintiff appealed the summary judgment to the Federal Circuit. Case 1, [Dkt. No. 175].

On January 31, 2017, Huawei moved for fees and expert costs under 35 U.S.C. § 285 and the court's inherent power. Case 1, [Dkt. No. 179]. Huawei argued that Huang, *inter alia*, failed to conduct a pre-filing investigation, failed to conduct formal discovery, filed frivolous motions and responses, ignored the Court's rulings, attacked Huawei's witnesses, and filed a motion asking the Court to file criminal perjury charges against Huawei. *Id.* In support of its motion, Huawei submitted declarations stating that Huang persistently contacted Huawei's in-house counsel throughout Case 1, despite having been asked to only communicate with Huawei through their outside counsel. Case 1, [Dkt. No. 179-1]. Even after Case 1 was dismissed, Huang told Huawei's in-house counsel that he would continue filing motions – forcing Huawei to reply and incur further legal fees. *Id.* Further, Huang told Huawei's counsel that he sued Huawei because one of his lawyer friends told him that if he were to represent Huang in a lawsuit against Huawei, the case would quickly settle for $1.5 million. *Id.* Huang said that he decided not to hire an attorney because he did not want to share revenue with a lawyer. *Id.* The Court held a hearing and Huang offered no

---

successful opposition to summary judgment. Case 1, [Dkt. No. 204]. Huang responded that he already had all the evidence he needed to oppose the summary judgment motion.

4

satisfactory explanation for his litigation conduct. Instead, Huang stated, as he had throughout Case 1, that Huawei's witnesses and lawyers were being untruthful and were committing perjury. Case 1, [Dkt. No. 204]. The Court found Huang's case exceptional and his litigation conduct to constitute bad faith and an abuse of the judicial process. *Id.*[2]

As to Case 2, Huang filed a Second Amended Complaint on December 30, 2016 without Huawei's consent or leave of Court. Case 2, [Dkt. No. 24]. Huang then filed a motion for leave to file his Second Amended Complaint on January 9, 2017. Case 2, [Dkt. No. 29]. On January 20, 2017, the Court denied Huang's motion for leave to file the Second Amended Complaint for Huang's lack of requisite diligence and good faith. Case 2, [Dkt. No. 34]. The Court also cancelled its initial Scheduling Conference in light of the Court's grant of summary judgment in Case 1 and, because Huawei informed the Court that it would file a motion to dismiss Huang's First Amended Complaint based on *res judicata* or estoppel arising from the dismissal of Case 1, the Court directed Huawei to file the *res judicata* motion. Case 2, [Dkt. No. 34].

Huawei moved for summary judgment on Huang's Case 2 claims on February 9, 2017, arguing that Huang's claims are barred by *res judicata* and the *Kessler* doctrine based on the Court's entry of summary judgment of noninfringement in Case 1. Case 2, [Dkt. No. 40]. The Court deferred resolution of Huawei's summary judgment motion and ordered the proceedings stayed pending the outcome of Plaintiff's appeal in Case 1. Case 2, [Dkt. No. 48]. The Federal Circuit affirmed the Court's grant of summary judgment in Case 1 on June 8, 2018. *Xiaohua Huang v. Huawei Techs. Co.*, 735 F. App'x 715 (Fed. Cir. 2018). Following the Federal Circuit's decision,

---

[2] Huang appealed the Court's § 285 fees Order several times. *See, e.g.*, Case 1, [Dkt. No. 205]. The Federal Circuit affirmed the Court's § 285 fees Order. Case 1, [Dkt. No. 237]. Huang has filed a notice indicating that he plans to appeal to the Supreme Court. Case 1, [Dkt. No. 248].

Huang moved to transfer Case 2 to the Northern District of California. Case 2, [Dkt. No. 61].[3] The Court denied the motion. Case 2, [Dkt. No. 64].

Now that the appeal has concluded in Case 1 and the stay is now lifted in Case 2, Huawei's summary judgment motion is ripe for resolution.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact by either (1) presenting evidence that affirmatively demonstrates the absence of any genuine issue of material fact, or (2) after adequate time for discovery, demonstrating that "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party cannot defeat summary judgment by resting on mere denials or allegations, but must set forth specific facts sufficient to raise a genuine issue of fact. *Id*. at 324. In examining the record, the court should do so in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

*Res judicata*, also known as "claim preclusion," is a mixed question of regional circuit law and Federal Circuit law. *Senju Pharm. Co., Ltd. v. Apotex Inc.*, 746 F.3d 1344, 1348 (Fed. Cir.

---

[3] In his motion, Huang argued, *inter alia*, that the Court wrongfully stayed the case, that all "the other cause[s] which this Court and the Panel in the [Federal Circuit] used are erroneous and not truthful," and the "judges of this case should be disqualified for their wrongful conduct and the legal action which Plaintiff Xiaohua Huang will take against the Judges of this case." *Id.*

2014). Courts look to the law of the regional circuit in which the district court sits for guidance as to *res judicata*, but whether a particular cause of action in a patent case is the same as or different from another cause of action has special application to patent cases, and thus courts apply Federal Circuit law to those issues. *Id.* Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

Four elements must exist for a claim to be barred by *res judicata*: (1) the parties in the subsequent action are identical to, or in privity with, the parties in the prior action; (2) the judgment in the prior case was rendered by a court of competent jurisdiction; (3) there has been a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits. *Duffie v. United States*, 600 F.3d 362, 372 (5th Cir. 2010). To evaluate the fourth element, courts have adopted the "transaction test," which focuses on whether the two cases "are based on the same nucleus of operative facts." *Houston Prof'l Towing Assoc. v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016). It is the "nucleus of operative facts, rather than the type of relief requested, substantive theories advanced, or types of rights asserted that defines the claim." *Id.*

The parties' dispute really centers on the fourth element of the *res judicata* doctrine, as the parties are identical, the judgment in Case 1 was rendered here in this court, and Case 1's judgment was a final judgment on the merits.[4] Huawei contends that it is entitled to summary judgment on the fourth element of *res judicata* for two reasons. First, both cases assert the same patents and the same patent claims. [Dkt. No. 40], 10. Second, the pleadings in both cases demonstrate that Huang

---

[4] Huang continues to voice dissatisfaction with the Court by arguing that the Court "apparently only took some of the fraud statement[s] and perjured testimony from Defendant's [summary judgment] motion." Case 2, [Dkt. No. 41], 12. Huang contends that the second element is not met because the Court's Orders in Case 1 lacked fair and competent jurisdiction process, and the third element is not met because the final judgment in Case 1 was "apparently erroneous." *Id.* Essentially, Huang disputes the findings in Case 1. Given the Federal Circuit's affirmance of Case 1's summary judgment motion, the Court finds these contentions moot.

7

seeks relief based on the same theory of direct infringement. *Id.*

It is undisputed that both cases assert the same patents and the same patent claims. Indeed, one of the areas of factual overlap the Federal Circuit considers in patent cases is "whether the same patents are involved in both suits." *Senju Pharm. Co. v. Apotex Inc.*, 746 F.3d 1344, 1349 (Fed. Cir. 2014). "Claim preclusion will generally apply when a patentee seeks to assert the same patent against the same party and the same subject matter." *Id.* (citing *Kearns v. Gen. Motors Corp.*, 94 F.3d 1553, 1557 (Fed.Cir.1996) (concluding that patents asserted again the same party in a previous action were properly dismissed on *res judicata* grounds) and *Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1305 (Fed.Cir. 2007) (noting that two cases involved the same cause of action because the cases included the same patent and the same accused products)).

The real question in this case concerns the accused products in Case 2. This concern is resolved by the Court making two inquiries, with both inquiries leading to the same conclusion: *res judicata* applies to Case 2, warranting the grant of summary judgment to Huawei.

The first inquiry asks whether Huang could have brought suit on Case 2's accused products back when he filed Case 1. "A possible basis for barring the different suit is that the causes of action should have been litigated together." *Kearns v. Gen. Motors Corp.*, 94 F.3d 1553, 1556 (Fed. Cir. 1996). This inquiry must be answered in the affirmative. All accused products in Case 2, with the exception of five product families, were publicly disclosed before December 1, 2015, the date Huang served his original Case 1 infringement contentions. These products were listed on Huawei's public website, where technical information about the products and product families were included. Jinsong Decl., [Dkt. No. 40-1], ¶ 4. Even the other five product families were known in time to have been properly joined in Case 1. Therefore, Huang had an opportunity to bring suit on all the accused products in Case 1, rather than by piecemeal litigation, but failed to

do so. Huang recognized that the accused products could have been asserted in Case 1 because he attempted to assert the accused products by seeking to file a fourth amended complaint and to amend his infringement contentions in Case 1. The Court noted at that time, as it does now, that Huang failed to show good cause to add so many new accused products so late in litigation. Further, after the Court denied his belated attempts to assert the accused products, and Huang filed Case 2's complaint, Huang attempted to consolidate the cases so as to conduct all pretrial matters in one proceeding. Such actions indicate that Huang could have brought suit on all the accused products in Case 1, especially since both cases arise from the same nucleus of operative facts. Case 1 was litigated on its merits and the same issues in Case 2 were previously raised in Case 1, warranting the application of *res judicata*. *See Kearns*, 94 F.3d at 1556.

Of course, the application of *res judicata* does not turn solely on whether a claim could have been brought in an earlier action. *See Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1325-26 (Fed. Cir. 2008) (finding that *res judicata* does not a bar a claim solely because it could have been raised in a prior action between the parties that was resolved by a final judgment on the merits).

The second inquiry is whether Case 1 and Case 2 involve essentially the same accused products.[5] Another area of factual overlap that the Federal Circuit considers in a patent cases involving *res judicata* is "the overlap of the product or process accused in the instant action with the product or process accused in the prior action." *Senju*, 746 F.3d at 1349. Indeed, a claim for patent infringement can only be barred by *res judicata* if that claim arises from the same transactional facts as a prior action. *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1326 (Fed. Cir. 2008). "[O]ne of the essential transactional facts giving rise to a patent infringement claim is 'the structure of the device or devices in issue.'" *Id.* (quoting *Foster v. Hallco Mfg. Co.*, 947 F.2d 469,

---

[5] This inquiry is largely the focus of Huawei's *Kessler* doctrine argument.

479 (Fed. Cir. 1991)). Therefore, "'two claims for patent infringement do not arise from the same transactional facts unless the accused devices in each claim are essentially the same.'" *Acumed*, 525 F.3d at 1326 (quoting *Foster*, 947 F.2d at 479-80). Accused devices are "essentially the same" where the differences between them are merely "colorable" or unrelated to the limitations in the claim of the patent. *Acumed*, 525 F.3d at 1324. The party asserting *res judicata* has the burden of showing that the accused devices are essentially the same. *Id.* "If the products or processes are essentially the same, then claim preclusion may apply." *Senju*, 746 F.3d at 1349 (citing *Acumed*, 525 F.3d at 1323).

The second inquiry must also be answered in the affirmative because Huawei has met its burden in in showing that the accused devices in both Case 1 and Case 2 are essentially the same. Huawei submits Huang's Case 1 P.R. 3-1 infringement contentions, Case 1, [Dkt. No. 40-5]; Huang's proposed First Amended P.R. 3-1 Infringement Contentions in Case 1, filed with the Court on June 9, 2016, Case 2, [Dkt. No. 40-6]; and, Huang's Case 2 P.R. 3-1 infringement contentions, Case 2, [Dkt. No. 40-7]. [6] Huawei compares these three documents, noting that the charts in the infringement contentions "map the exact same claim terms to the accused products in word-for-word identical fashion in both Case 1 and Case 2." Case 2, [Dkt. No. 44], at 5. Huang's infringement contentions in both cases, whether both proposed or submitted, indicate that Huang argues that the accused products infringe in essentially the same way as to the patents-in-suit. Thus, it appears that the differences between the accused products in Case 1 and Case 2 are not related

---

[6] Huang moves to strike Dkt. No. 40-6, Huawei's Exhibit 2-B, on the basis that the proposed amended infringement contentions in Case 1 were denied by the Court. Case 2, [Dkt. No. 43]. This is a not proper ground to strike the exhibit. Huang also moves to compel Huawei to file this exhibit, along with Huawei's Exhibits 2-A, Case 2, [Dkt. No. 40-5] and 2-C, Case 2, [Dkt. No. 40-7] under seal. Case 2, [Dkt. No. 43]. Huang has made no showing that these documents contain confidential information. Further, Exhibits 2-A and 2-B were previously filed in Case 1, and were not filed under seal. Huang already sought to have Exhibit 2-C filed under seal, see Case 2, [Dkt. No. 19], but made no showing for such relief and thus his previous motion to seal was denied, *see* Case 2, [Dkt. No. 19]. Likewise, Huang makes no showing now. Therefore, the Court **DENIES** Huang's motion to strike and motion to compel. Case 2, [Dkt. No. 43].

to the limitations in the patent claims, warranting a finding that the products are essentially the same. *Acumed*, 525 F.3d at 1324.

Huang contends that the Case 1 and Case 2 are not based on the same cause of action because the accused products are different for three reasons.

First, Huang contends that there are more than 70 new products alleged in Case 2 while there were only 7 products alleged in Case 1. Case 2, [Dkt. No. 41], 15. This is argument does not address whether these new products in Case 2 are essentially the same as Case 1's accused products.

Second, Huang argues that the accused products in Case 2 contain the TCAM chips from Broadcom and the TCAM IP of eSilicon Corporation, while the accused products in Case 1 did not contain TCAM chips and TCAM IPs. *Id.* However, a reading of Huang's Third Amended Complaint in Case 1 shows that Huang himself alleged that seven accused products in Case 1 use embedded TCAM and or/ TCAM Chips. Case 1, Third Am. Compl., [Dkt. No. 38], ¶ 17

Third, Huang alleges that the accused products in Case 2 are "essentially different" in name, content, and function from the accused products in Case 1. Case 2, [Dkt. No. 41], 15. This argument is difficult to understand, given that Huang's infringement contentions in both cases track word for word, indicating that the accused products in Case 2 infringe in the same manner as the accused products in Case 1. Further, Huang has alleged at least one accused Huawei product family in Case 2 that was already accused in Case 1.[7]

Without making more than mere denials and unfounded allegations, Huang has not defeated summary judgment.

---

[7] This product family is the CloudEngine 12800 SeriesData Center Switches.

## CONCLUSION AND RECOMMENDATION

The factual overlap between Case 1 and Case 2 leads the Court to conclude that *res judicata* applies to this case as a matter of law. Huang has moved to strike an exhibit submitted in support of Huawei's motion for summary judgment and moved to compel Huawei to file certain supportive exhibits under seal. Case 2, [Dkt. No. 43]. These exhibits are Huang's Case 1 P.R. 3-1 infringement contentions, Case 1, [Dkt. No. 40-5]; Huang's proposed First Amended P.R. 3-1 Infringement Contentions in Case 1, filed with the Court on June 9, 2016, Case 2, [Dkt. No. 40-6]; and, Huang's Case 2 P.R. 3-1 infringement contentions, Case 2, [Dkt. No. 40-7]. This motion is **DENIED** for the reasons expressed above. Through these exhibits, as well as Huang's own arduous litigation history with this Court, Huawei has shown that there remains no issue of fact and that, as a matter of law, *res judicata* applies to Huang's claims in Case 2. The Court **RECOMMENDS** that Huawei's Motion for Summary Judgment, Case 2, [Dkt. No. 40], be **GRANTED**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings, and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**SIGNED this 12th day of February, 2019.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE